<hr />

### THE STATE vs. MARCUS HELLMAN.

New Haven Co., Dec. T., 1887. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

The statute (Gen. Statutes, 1888, § 3094,) prohibits all licensed venders of liquors from keeping open their places between eleven o'clock at night and five the following morning, but provides that "the towns or the municipal authorities of any city, borough or town may fix the time of closing at any hour not later than twelve o'clock." Held—

1. That by "the municipal authorities of a town" was meant the selectmen of the town.

2. That where a town embraced a city and the city had not acted on the subject, a vote of the selectmen fixing the time for closing within the town at twelve o'clock, was valid and operative, and applied to the whole town, and not to that part of it only which was outside the city limits.

[Argued December 6th—decided December 30th, 1887.]

PROSECUTION for keeping open a licensed liquor saloon

after eleven o'clock at night; brought to the police court of Waterbury and, by appeal of the defendant, to the Superior Court in New Haven County, and tried to the jury in that court before *Torrance, J.* Verdict " guilty," and appeal by the defendant for error in the charge of the court. The case is fully stated in the opinion.

*J. O'Neill* and *T. Donahue*, for the appellant.

*G. E. Terry*, for the State.

LOOMIS, J. On the 18th of June, 1887, the defendant, a liquor licensee, kept open his saloon within the limits of the city and town of Waterbury, after eleven o'clock at night, pursuant to a vote of the selectmen of the town previously passed on the same day, to the effect that saloon keepers within the limits of that town might keep open until twelve o'clock at night. On the next day a criminal prosecution was instituted against him for keeping open after eleven o'clock that night. Upon the trial in the Superior Court the defendant claimed, and asked the court to charge the jury, that the vote and action of the selectmen justified him in keeping open his saloon until twelve o'clock at night, on the night in question. The court did not instruct the jury as requested by the defendant, but did instruct them that the action of the selectmen did not and would not justify the defendant in keeping open his saloon after eleven o'clock at night within the limits of the city of Water-bury; that the law did not confer upon the selectmen any power to fix the time except outside the limits of the city and within the limits of the town of Waterbury. It was admitted that the municipal authorities of the city had taken no action in the premises.

The defendant, having been found guilty, brings the question as to the correctness of the charge before this court.

The question depends entirely upon the meaning and true construction of a public act approved May 10th, 1887, and found on page 718 of the session laws of that year, which,

after prohibiting all licensed persons from keeping open their places where liquor is sold between eleven o'clock at night and five o'clock on the following morning, provides that " the towns or the municipal authorities of any city, borough or town may fix the time of closing at any hour not later than twelve o'clock at night."

The two controlling questions arising as to the construction of the statute in the present case, are—1st. Had the selectmen any authority to extend the time for keeping open the saloon ? and if so, 2d. Was their authority co-extensive with the town limits, or restricted to that portion of the town outside the city limits ?

The first question depends on another, namely, whether selectmen answer the description, " municipal authorities of a town." In theory of law a town is a municipal corporation, but who are its municipal authorities ?

The term can have no application to justices of the peace, constables or grandjurors, for they do not represent the town as such, or have any agency in its corporate affairs, but they are agents of the law, appointed by the voters of the town. Nor can it appropriately refer to town clerks, treasurers or registrars, for their duties are special and limited, without any agency representing the municipality; but the term may be reasonably applied to selectmen, who are agents of the town or municipality, and whom the law in terms requires " to superintend the concerns of the town."

The suggestion has been made that as the phrase " municipal authorities of a city" refers to its common council, and that of " the municipal authorities of a borough " refers to its warden and burgesses, each having some legislative power to enact rules and by-laws, so the " municipal authorities of a town " must refer to a similar authority to be exercised by the voters of the town assembled in town meeting.

This construction might have some plausibility had the power in question been vested only in the municipal authorities referred to, but it borders on the absurd when we find the same authority distinctly conferred on the town in its corporate capacity, and then given in the alternative to the

municipal authorities. It is incredible that the two expressions should refer to one and the same body.

The alternative tribunal, therefore, must be understood as one not already endowed with the power of extending the time, and as also referring to some existing officers of the town, having authority by law " to superintend its concerns " and manage its affairs. The words in question can be construed as referring to selectmen, and cannot by possibility apply to any other existing town officers.

If then the selectmen had any power in the premises did they exceed their power? At the time they took action neither the town, nor any of the authorities mentioned in the alternative, had taken any action in the premises; so that the question is not complicated by any actual conflict of authority. The action of the selectmen in terms applied to the entire town. The court below however held that the action was nugatory as to that portion of the town included within the city limits, and that it afforded no protection to the defendant.

Is such a limitation warranted by any fair construction of the statute? It seems to us not.

Obviously the selectmen, as the municipal authority referred to, had, in the absence of any prior action by the other authorities, the same power the town itself would have had. Suppose then a town-meeting had been called for the purpose of acting on this question, would its action have been limited to a fraction of its territory? The voters from all parts of the town, including the city, would decide the question, and by what right would the action so taken be restricted to the rim of territory outside the city? If all the electors vote, do they not vote for the benefit of all the inhabitants? Do the voters within the city vote for a regulation having no effect on themselves while it is binding on others? It seems to us the regulation made by all the voters of the town must apply to the entire territory and to all the inhabitants, and not to a part only. And if so, then the alternative power of the selectmen acting for and in behalf of the town, must have precisely the same extent and effect.

The argument which prevailed in the court below assumed that neither the action of the town nor of its selectmen could operate at all within the city limits. Were this so, then all the towns within the state having limits co-extensive with city limits would be entirely excepted from the operation of the statute. To so hold it seems to us would afford a striking instance of judicial legislation. Why should the city in such case absorb and annihilate the town, any more than the town the city? There is nothing in the statute to justify such an interpretation.

We conclude then that, under the circumstances of this case, the extension of time by the selectmen had the effect to exempt the defendant from criminal liability for keeping open his saloon within that time.

It is obvious that other questions concerning the construction of the statute will be likely to arise. We forbear however to proceed any farther than the exigencies of the present case require. The language of the act is so obscure that no judicial interpretation founded upon it can prove very satisfactory. It must be left to the legislature itself to make the meaning clear.

There was error in the ruling complained of, and a new trial is ordered.

In this opinion the other judges concurred.